IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>　)<br>　　　　　　Plaintiff, )<br>　)<br>v. )<br>　)<br>RUSSELL HOFFMANN, )<br>　)<br>　　　　　　Defendant. )<br>　) | 8:05CR282<br><br>SENTENCING MEMORANDUM |

　　　　Defendant Russell Hoffmann is before the court for sentencing. He was convicted of one count of giving illegal gratuities in violation of 18 U.S.C. § 201(c)(1)(A) after a jury trial. This sentencing memorandum supplements findings made on the record at a sentencing hearing on October 20, 2006.

　　　I.　BACKGROUND

　　　　Hoffmann and co-defendant William Schwening were each charged with several counts of giving and receiving illegal gratuities in violation of 18 U.S.C. § 201(c)(1)(B) & (C). Filing No. 75, Second Superseding Indictment. The defendants were tried together. Hoffmann testified on his own behalf and Schwening did not. The jury returned a verdict of not guilty on all counts as to defendant Schwening. Filing No. 109, William Schwening Verdict. Hoffmann was acquitted on three counts but convicted on one, which involved illegally giving gratuities of a Titleist driver and 3-wood golf club in October of 2003, for or because of an official act. Filing No. 111. Hoffmann moved for a new trial, asserting that the verdict was inconsistent. *See* Filing No. 117, Motion for New Trial. The motion was denied. Filing No. 124, Memorandum and Order.

The United States Probation Office ("the probation office") prepared a Presentence Investigation Report ("PSR"). In the PSR, the probation office determined that Hoffmann's base offense level was 7 under U.S.S.G. § 2C1.2(A). It determined that the amount of loss was $6,898.33.[1] It added two levels under U.S.S.G. § 2C1.2(b)(1) for an offense involving more than one gratuity and two levels under U.S.S.G. § 2B1.1(b)(1)(B) for a loss of $5,000 to $10,000. Accordingly, the PSR calculates Hoffmann's adjusted offense level to be 11. Because Hoffmann had proceeded to trial, the PSR does not provide an adjustment for acceptance of responsibility. Hoffmann had no prior convictions, resulting in criminal history category I. His resulting sentencing range under the Guidelines was 8 to 14 months, placing him in Zone C of the Sentencing Table.

The government accepted and adopted the findings in the PSR. Filing No. 122. Hoffmann accepted the calculations of the PSR, but moved for downward departure under U.S.S.G. § 5K2.0, contending that the circumstances of the case took it outside the heartland of cases contemplated under the Guidelines. Filing No. 123. Defendant also argued for a deviation or variance from the Guidelines range. He argued that the jury verdict, if not inconsistent, was at least anomalous. He also contended, as an equitable matter, that the Guidelines sentence would unfairly punish acquitted conduct. Further, he noted that the count of conviction involved a government act, preparation of a rating, that the Corps of Engineers was required to perform. He also pointed to his lack of personal

---

[1] This amount represents the value of all the gratuities charged in the Superseding Indictment. The value of the gift involved in Hoffmann's count of conviction was $654.43. At trial, the parties stipulated that the amount of loss for sentencing purposes was between $5,000 and $10,000. *See* Filing No. 133, Trial Transcript ("Tr.") at 1143-44. The court will abide by that stipulation.

benefit as a result of the offense. The defendant relied on the testimony at trial in support of his motion. The government opposed any departure or variance.

II. DISCUSSION

Under *United States v. Booker*, 543 U.S. 220 (2005), the Guidelines are no longer a mandatory regime. *United States v. Gall,* 446 F.3d 884, 888 (8th Cir. 2006). "Instead, the district court must take the advisory guidelines into account together with other sentencing factors enumerated in 18 U.S.C. § 3553(a)." *Id.* After *Booker,* there are essentially three steps to determining an appropriate sentence: first, the sentencing court should determine the applicable Guidelines range without consideration of any Guidelines departure factors; second, the court, where appropriate, should consider the departure provisions in the Guidelines to determine the resulting Guideline range; and third, the court should consider the other statutory sentencing factors set forth 18 U.S.C. § 3553 to determine whether to impose the Guidelines sentence, as ascertained in the prior steps, or a nonguidelines sentence driven by the other statutory considerations. *United States v. Sitting Bear,* 436 F.3d 929, 934-35 (8th Cir. 2006); *United States v. Haack,* 403 F.3d 997, 1002-03 (8th Cir.), *cert. denied*, 126 S. Ct. 276 (2005).

Under the Guidelines, if the applicable Guideline range falls in Zone A of the Sentencing Table, a sentence of imprisonment is not required. *See* U.S.S.G. § 5C1.1(b). If an applicable Guideline range falls in Zone B of the Sentencing Table, the minimum term may be satisfied by either imprisonment or imprisonment of at least one month that includes a term of supervised release substituting community confinement or home detention for imprisonment, or by a sentence of probation that includes a provision substituting community confinement or home detention for imprisonment. *See* U.S.S.G.

§ 5C1.1(c)(1)(2) & (3). If the applicable Guideline range falls in Zone C of the Sentencing Table, a sentence of the minimum term may generally be satisfied by a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention day for day, provided that at least one-half of the minimum term is satisfied by imprisonment. See U.S.S.G. § 5C1.1(d)(2).

In considering departure, a district court must decide whether the Sentencing Commission has forbidden, encouraged, or discouraged a departure based on a certain feature. *Koon v. United States,* 518 U.S. 81, 95-96 (1996); U.S.S.G. §§5K2.1-5K2.23 (enumerating encouraged factors)*;* 5H1.10 (prohibiting consideration of race, sex, national origin, or creed)*;* 5H1.6 (discouraging consideration of family ties and responsibilities). If the special factor is an encouraged factor, the court is authorized to depart if the Guideline applicable to the offense does not already take it into account. *United States v. Lightall*, 389 F.3d 791, 796 (8th Cir. 2004). Discouraged factors, or encouraged factors already taken into account by the Guidelines, can be the basis for a departure "if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Lightall,* 389 F.3d at 796; *United States v. Hadash,* 408 F.3d 1080, 1083 (8th Cir. 2005) (holding, post-*Booker*, that a district court can depart without abusing its discretion if the case falls outside the heartland of cases in the Guideline at issue). "[I]f the sentencing court finds that there exists an aggravating or mitigating circumstance 'of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described,'" a departure is appropriate. *United States v. Chase,* 451 F.3d 474, 482

4

(8th Cir. 2006) (*quoting* U.S.S.G. § 5K2.0).  Sentencing courts are to treat each Guideline as carving out a "heartland," a set of typical cases embodying the conduct that each Guideline describes.  *Id.*  When a court finds an atypical case, one to which a particular Guideline linguistically applies but where conduct significantly differs from the norm, a court may consider a departure under U.S.S.G. § 5K2.0.  *Id.*; U.S.S.G. § 1A1.1, cmt. n.4(b).

Once the district court calculates the advisory Guidelines range, including departures, it "may then impose a sentence outside the range in order to 'tailor the sentence in light of the other statutory concerns' in § 3553(a)."  *Gall,* 446 F.3d at 889 (*quoting Booker*, 543 U.S. at 245-46 (2005)).  The statutory concerns expressed in § 3553(a) require the sentencing court to "'impose a sentence sufficient, but not greater than necessary,' to comply with sentencing goals considering the nature and seriousness of the offense, the history and characteristics of the defendant, and the need for the sentence to provide justice, deterrence, and other goals of punishment." *United States v. Pappas,* 452 F.3d 767, 773 (8th Cir. 2006); *see* 18 U.S.C. § 3553 (a)(2)(A)-(C).  The court must also consider the need to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(2)(C)-(D).

A sentence within the Guidelines range is presumptively reasonable, but "it does not follow that a sentence outside the guidelines range is unreasonable." *United States v. Myers,* 439 F.3d 415, 417 (8th Cir. 2006).  A defendant may rebut the presumption of reasonableness in certain "highly unusual circumstances." *United States v. Medearis*, 451 F.3d 918, 920 (8th Cir. 2006) (stating that "to consider the guidelines is not to be ruled by

them"). District courts must vary from the Guidelines range where other § 3553 factors would render a sentence within the Guidelines range unreasonable. *Id.*

Sentences varying from the Guidelines range are reasonable if the district court offers justification based on the factors in 18 U.S.C. § 3553(a). *United States v. Rogers,* 448 F.3d 1033, 1035 (8th Cir. 2006). Although the court "need not categorically rehearse each factor, 'the further the judge's sentence departs from the guidelines sentence, the more compelling the section 3553(a) justification must be.'" *Id.* (*quoting United States v. Givens,* 443 F.3d 642, 646 (8th Cir. 2006)); *United States v. Lazenby,* 439 F.3d 928, 932 (8th Cir. 2006) (stating "[h]ow compelling that justification must be is proportional to the extent of the difference between the advisory range and the sentence imposed"); *United States v. Larrabee*, 436 F.3d 890, 892 (8th Cir. 2006) (noting that as the size of a variance from the advisory Guidelines sentence grows, so too must the reasons that warrant it).

Although the Eighth Circuit requires extraordinary variances to be supported by extraordinary circumstances,[2] the United States Supreme Court has recently granted certiorari to address the question of whether it is "consistent with *United States v. Booker,* 543 U.S. 220 (2005), to require that a sentence which constitutes a substantial variance from the Guidelines be justified by extraordinary circumstances?" *Claiborne v. United States,* No. 06-5618, — S. Ct. —, 2006 WL 2187967 (Nov. 3, 2006).

---

[2]Sentences that vary from the Guidelines sentencing range by over 50% have been characterized as extraordinary. *United States v. Rogers,* 448 F.3d 1033, 1035 (8th Cir. 2006) (reversing 76% variance); *United States v. Meyer,* 452 F.3d 998, 1001 (8th Cir. 2006) (affirming a 50% upward variance and holding a variance of 50% is extraordinary); *see also United States v. Bryant,* 446 F.3d 1317, 1319-20 (8th Cir. 2006) (characterizing a 57% variance as extraordinary); *Larrabee,* 436 F.3d at 892-93 (holding a 54% variance is extraordinary); *but see United States v. Lee,* 454 F.3d 836, 839 (finding a variance of 54% is large, but "neither unique nor necessarily unreasonable").

Although a "dramatic" variance cannot be defined precisely, the Eighth Circuit finds it instructive "to consider the actual sentence as a percentage of the advisory sentence, or the number of offense levels traversed by a variance." *United States v. Maloney,* — F.3d —, —, 2006 WL 3040613, *8 (8th Cir. Oct. 27, 2006) (noting "[t]he offense-level approach seems more in keeping with our assigned role to further the objectives of the Sentencing Reform Act, because the guideline system established by the Act was designed to adjust sentences incrementally by offense level, rather than by percentages."). "Evaluating the sentence imposed as a percentage of the advisory sentence can be useful in some instances, but the court must bear in mind that a downward variance of 'fifty percent' is more 'dramatic' within the context of the advisory guideline system when the advisory sentence is 360 months' imprisonment (and the variance amounts to seven offense levels) than when the advisory sentence is eight months (and the variance is only two offense levels)." *Id.* at *8 (also noting that the percentage reduction will always seem larger if the overall number is a small one, for example) (citations omitted).

Also, factors that were discouraged or prohibited departure factors under the mandatory Guidelines may be considered in applying the § 3553(a) factors under *Booker*. *United States v. Lazenby*, 439 F.3d at 933 (8th Cir. 2006). "[P]re-*Booker* departures and post-*Booker* variances are not the same" and there may be "cases that would not justify a departure under the Guidelines but which are appropriate for a variance" as well as "cases in which a combination of a Guidelines departure and other § 3553(a) factors may produce a lower reasonable sentence than a departure alone." *United States v. Robinson,* 454 F.3d 839, 842 (8th Cir. 2006).

One of the highly unusual circumstances that will support a nonguidelines sentence is the existence of unwarranted sentence disparities between defendants who have been found guilty of similar conduct.  *See United States v. Krutsinger,* 449 F.3d 827, 830 (8th Cir. 2006); *Lazenby,* 439 F.3d at 933 (noting that *Booker* gives district courts the discretion to cure an injustice such as that caused by co-defendant stipulations to differing quantities of drugs that are not supported by the facts).  Also, similarly-situated or nearly-identical individuals who commit the same crime should not be subjected to widely varying sentences due to mere "happenstance[s] in timing" of indictments or plea agreements.  *See Krutsinger*, 449 F.3d at 830.

III.  ANALYSIS

    A.  Guidelines Sentence

The court adopts the calculations in the PSR.  Hoffmann's base offense level is 11, his criminal history category is I and his sentencing range is 8 to 14 months, which places him in Zone C of the Guidelines Sentencing Table.

The court finds Hoffmann's motion for downward departure pursuant to U.S.S.G. § 5K2.0 should be granted.  The court rejects Hoffmann's purported lack of personal gain or the nature of the governmental act linked to the gift as reasons to justify a departure.  Based on the evidence adduced at trial, the court finds that this case is outside the heartland of cases contemplated by the Sentencing Commission in formulating the illegal gratuities Guideline.  The statute criminalizing the giving and/or receiving of illegal gratuities contemplates some sort of reciprocity, hence the requirement that the government establish a link between the gift and an official act.  *See United States v. Sun-Diamond Growers of Ca.,* 526 U.S. 398, 404 (1999).  The illegal gratuity Guideline was drafted with

that reciprocal relationship in mind. The court finds the curious jury verdict in this case takes it outside the heartland of illegal gratuities cases.

Although the jury's verdict is not inconsistent as a matter of law, the court agrees with the defendant that it has produced an anomalous result. The primary difference between the evidence relating to Hoffmann and that relating to Schwening was that Hoffmann testified and Schwening did not. Essentially the same evidence of guilt was presented on both defendants. The court is not able to rationally explain the difference in verdicts by any legitimate distinction that the jury could have drawn between the two defendants.[3] Whatever its rationale, the court finds that the evidence, though sufficient to support the jury's verdict of Hoffmann's guilt, will not support the imposition of a sentence that unfairly punishes only one of two equally-culpable defendants. Because of the reciprocal relationship and conduct of Schwening and Hoffmann, this case is unusual enough that a departure is warranted.

The government acknowledges that it is difficult to reconcile the acquittal of Mr. Schwening and the conviction of Mr. Hoffmann. Based on the evidence presented at trial, the court finds that the verdict was due, in part, to the government's failure to effectively present the case against both defendants, particularly its failure to highlight to the jury the differences between legal obligations in the public and private sectors. Hoffmann should not be called to unfairly bear the brunt of the government's shortcomings in the prosecution of its case.

---

[3] The jury verdict could be explained by personal dislike of Hoffmann. He appeared to be a person of means, as opposed to a public servant, and perhaps the jury could more easily direct animus toward him. The jury may have concluded that Schwening had suffered enough in the loss of his government employment. These are not proper jury considerations.

The jury, representing society, has decided that one defendant should be convicted and the other should go free. If both had been convicted, the court would have been presented with an entirely different scenario. There is no doubt that both defendants would have served time in jail. The jury's lop-sided verdict effectively requires the court to equalize the treatment of the two defendants.

Both Schwening and Hoffmann suffered serious consequences by virtue of being charged with the crime. Both have lost their jobs and Hoffmann has been barred from employment by any firm that contracts with the government. However, only Hoffmann will suffer the stigma of a felony on his record and the loss of freedom that a lengthy period of probation will bring. To make Hoffmann a "poster child" to deter the criminal conduct at issue, while Schwening—arguably in a position as a government employee to inflict more harm to society through criminal acts—goes unpunished would intensify the incongruity in the verdict and compound the unfairness of the government's failure to properly present the case against both defendants. Accordingly, the court finds Hoffmann's motion for downward departure should be sustained and he should be sentenced to three years of probation.

### B. Section 3553(a) factors

Alternatively, if a departure is not appropriate, the court finds it would vary or deviate from the Guideline sentence of 8 to 14 months, only half of which requires incarceration, to a sentence of three years' probation. The probation office recommends a sentence of probation for this defendant. The court finds this sentence is reasonable in consideration of the sentencing concerns outlined in 18 U.S.C. § 3553(a).

In sentencing Hoffmann, the court has considered the nature and circumstances of the offense. The court finds that giving and receiving illegal gratuities is a serious crime that affects the public's confidence in the government and governmental programs. An important sentencing consideration in this case is the deterrence of others from this sort of conduct.

The defendant has already suffered serious consequences. Hoffmann's prosecution received considerable publicity in his hometown. That publicity, along with damage to Hoffmann's reputation, will also deter others from engaging in similar criminal conduct. The mere fact of the prosecution of these individuals sends a compelling message of deterrence to government employees and those who contract with them. Also, the stigma of a felony conviction will operate to deter this type of criminal behavior by others in positions similar to Hoffmann's. The value of prison time as a deterrent, over and above these other factors, would be marginal.

Further, the court has considered Hoffmann's history and characteristics. Hoffmann has no criminal history points. He has had no previous contacts with the criminal justice system. The probation office finds that he presents a low risk of recidivism, and the court agrees. The probability of recidivism by defendant approaches zero. The court finds it extremely unlikely that Hoffmann would engage in this or any other criminal behavior in the future. In light of Hoffmann's demonstrated remorse, which the court credits as sincere, there is little need to protect the public from any future crimes. Nevertheless, the public's interest will be protected by the court's imposition of probation.

This sentence reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. The evidence shows Hoffmann's company had engaged

in similar conduct, with impunity, for years. That conduct, however, was not discouraged by the government, which mitigates Hoffmann's culpability to some extent. Given that the benefit to society of a sentence of imprisonment would be negligible, any benefit of incarceration is outweighed by the harm it would do to Hoffmann's family and to Hoffmann's prospects of finding employment.

The court also has considered the kinds of sentence available and the applicable categories of offenses and defendants set forth in the United States Sentencing Guidelines and its policy statements. As discussed above, the court has calculated Hoffmann's Guidelines sentence, granted a departure, and imposed a Guidelines sentence. To the extent that a departure cannot be supported, this satisfies the court's obligation to consider the kinds of sentence available under the Guidelines.

Defendant's Guidelines calculation was based on several variables that increased his offense level. Neither party objected to the application of those adjustments. The court notes that if either adjustment had been successfully challenged or an adjustment for acceptance of responsibility has been assessed, Hoffmann's sentencing zone would have been affected, changing the court's options on the kinds of sentence available. Ordinarily, differences in these sentencing variables affects only the length of a sentence, not the kind of sentence. The term of probation imposed by the court is considerably longer than the minimum term of imprisonment that the court would have imposed under the Guidelines and does not amount to a dramatic variance under the circumstances.

Most importantly, the court has considered the need to avoid sentencing disparity between defendants who have engaged in similar criminal behavior. The sentence imposed on Hoffmann eliminates the disparity in the treatment of the defendants in this

case, as well as between defendants charged with crimes that the government's evidence supported in this case. As noted, deficiencies in the government's prosecution of the case as to both defendants resulted in a significant disparity. Accordingly, the court finds a sentence of three years of probation adequately addresses the sentencing objectives outlined in Section 3553.

An amended judgment and commitment and statement of reasons in accordance with this sentencing memorandum will issue this date.

DATED this 22nd day of November, 2006.

BY THE COURT:


s/ Joseph F. Bataillon
Chief United States District Judge